[Cite as *Mill Creek Metro. Park Dist. Bd. of Commrs. v. Hough*, 2023-Ohio-3426.]

IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

THE BOARD OF
COMMISSIONERS OF THE MILL
CREEK METROPOLITAN
PARK DISTRICT,

      PLAINTIFF-APPELLEE,

v.

THOMAS HOUGH, ET AL.,

      DEFENDANT-APPELLANT.

APPEAL NO.  **21MA065**

TRIAL COURT NO. 2019 CV 179

---

**OPINION AND JUDGMENT ENTRY**
Case No. 21MA065

BEFORE:   Judge Jason P. Smith (Sitting by Assignment)
               Judge Peter B. Abele (Sitting by Assignment)
               Judge Michael D. Hess (Sitting by Assignment)

---

**JUDGMENT VACATED AND REMANDED**

---

| | |
|---|---|
| Molly K. Johnson | James E. Roberts |
| Jason Rebraca | Elizabeth H. Farbman |
| Johnson & Johnson | Roth, Blair, Roberts, Strasfeld |
| 12 West Main Street | & Lodge |
| Canfield, Ohio 44406 | 100 Federal Plaza East, Suite 600 |
| Attorney for Appellant | Youngstown, Ohio  44503 |
| | Attorney for Appellee |

RELEASED: 09/22/23

{¶1} Appellant, Thomas Hough, appeals the judgment of the Mahoning County Court of Common Pleas which entered judgment in favor of Appellee, the Board of Commissioners of the Mill Creek Metropolitan Park District (hereinafter "Mill Creek"). The judgment was entered after a jury determined the amount of compensation due to Hough as a result of Mill Creek's taking of a portion of Hough's private property for the creation of a bikeway trail. Hough also appeals the trial court's subsequent denial of his motion to reopen, which was filed pursuant to Civ.R. 60(B). On appeal, Hough raises two assignments of error contending 1) that the trial court erred in failing to make a determination as to whether or not Mill Creek complied with R.C. 163.04, R.C. 163.041, and R.C. 163.05, as required by R.C. 163.09; and 2) that the trial court erred in failing to address Hough's arguments under Civ.R. 60(B)(4) and 60(B)(5).

{¶2} Because we conclude that the trial court's order permitting Hough to amend his answer in effect permitted Hough to challenge Mill Creek's authority and/or necessity to appropriate the property at issue, an obligation was created on the part of the trial court at that time to set the matter for a necessity hearing as required by R.C. 163.09(B)(1). We further conclude that because the trial court did not make a determination regarding necessity prior to submitting the case to the jury on the issue of compensation or before subsequently rendering final judgment, the trial court erred. Accordingly, the "Agreed Jury Award and Magistrate's

Decision" as well as the "Judgment Entry" issued by the trial court, both of which are dated June 18, 2021, are hereby vacated.

{¶3} Furthermore, this matter is remanded with instructions for the trial court to permit additional pleadings and evidence as necessary in response to the trial court's allowance of Hough's answer to be amended to challenge Mill Creek's right to appropriate the property at issue and to set the matter for a necessity hearing as required by to R.C. 163.09 before proceeding to a determination on compensation.

## FACTS

{¶4} This matter began with Mill Creek's filing of a "Petition/Complaint to Appropriate Property" on January 24, 2019. The petition sought to appropriate a portion of Hough's property for a 6.4 mile extension of a 10.6 mile bikeway trail that was initially constructed in 2000 and 2001. The initial 10.6 mile trail was identified as Phases I and II. The petition alleged that Mill Creek had the authority to appropriate the property by virtue of a resolution passed in 1993 "resolving that the public interest demanded the construction of a bicycle path on a railroad right-of-way abandoned by Conrail." The petition also alleged that another resolution that was passed on September 10, 2018 resolved as follows:

> * * * that it was necessary and in the best public interest that Mill Creek be authorized to complete Phase III of the Bikeway project and, further, that Mill Creek be authorized to consummate and complete all acquisition transactions as may be necessary to

acquire the real property contemplated for inclusion in Phase III of the project or, in instances where agreement cannot be reached with the landowner, that Mill Creek by and through its legal counsel be authorized to appropriate such property by power of eminent domain and initiate legal proceedings pursuant to Ohio Revised Code Chapter 163.

{¶5} Mill Creek further alleged in its petition that it had "complied with the requirements of R.C. §§ 163.04 and 163.041 by providing and delivering a written *Notice of Intent to Acquire and Good Faith Offer* at least thirty (30) days prior to the filing of this action." The petition stated that "[t]rue and accurate copies of Mill Creek's *Notice of Intent to Acquire and Good Faith Offer* are attached hereto as Exhibit 5." The paper court record indicates that the petition did in fact have several exhibits attached to it, one of which was the Notice of Intent to Acquire and Good Faith Offer.

(¶6} Hough filed his answer on February 13, 2019. Hough's answer generally denied, for lack of information, nearly all of the allegations contained in Mill Creek's petition. However, the answer specifically denied Mill Creek's claim that it had complied with the requirements of R.C. 163.04 and 163.041 relating to the provision of the Notice of Intent to Acquire and Good Faith Offer. The answer also specifically denied Mill Creek's claim that the fair market value of the property sought to be appropriated was $63,010.00. The answer did not set forth any facts in support of these two specific denials.

{¶7} At this point, the matter proceeded through motion practice and discovery with the taking of several depositions, including the deposition of Hough and John Saunders, an expert retained by Hough to render an opinion regarding the value of topsoil and other materials located on Hough's property in the area sought to be appropriated. Thereafter, a jury was empaneled and a compensation trial was held. Because this Court has only been provided with excerpts of the jury trial transcript and was provided none of the trial exhibits, we do not have a complete picture of what transpired at trial. However, at issue in this matter is what occurred at the very end of trial, just before the matter was submitted to the jury for deliberation.

{¶8} At the conclusion of evidence, it appears that Hough's counsel orally moved for a directed verdict, and also moved the court to amend the pleadings to conform to the evidence pursuant to Civ.R. 15. As will be discussed more fully below, evidence introduced at trial indicated that the Notice of Intent to Acquire and Good Faith Offer were provided to Hough by either a contractor of Mill Creek, or by the contractor's subcontractor, rather than by Mill Creek itself. Based upon this testimony, Hough sought to amend his answer to challenge Mill Creek's authority to appropriate his property. Although the trial court denied Hough's motion for a directed verdict, a review of an excerpt of the trial transcript reveals that the trial court granted Hough's motion to amend the pleadings to conform to

the evidence. More specifically, the trial court permitted Hough to amend his answer to assert an "affirmative defense" regarding Mill Creek's provision of the Notice of Intent to Acquire and Good Faith Offer.

{¶9} Thereafter, however, the trial court handed the matter over to the jury for deliberation on the issue of compensation. The jury returned a verdict finding that the value of the property being taken was $68,975.00. The trial was then concluded, followed by the issuance of a magistrate's decision and trial court judgment. This appeal followed. However, on the day prior to filing a notice of appeal, Hough filed a motion to reopen pursuant to Civ.R. 60(B). This Court returned the matter to the trial court by a limited remand in order for the court to consider the pending Civ.R. 60(B) motion, which was ultimately denied.

{¶10} Once the matter was returned to this Court and Hough filed his appellate brief, Mill Creek followed with the filing of its appellee brief and it attached two exhibits to its brief. The first exhibit consisted of a copy of the underlying petition to appropriate that included several exhibits of its own, one of which was a Notice of Intent to Acquire and Good Faith Offer. Hough responded by filing a Motion to Strike Exhibit 1 arguing that neither the paper record nor the electronic docket included exhibits attached to the underlying petition. Hough essentially argued that Mill Creek was attempting to add evidence to the appellate record that was not part of the trial court record. After reviewing the paper record

that was transmitted to this Court on appeal, we determined that the underlying

petition did in fact include several exhibits, one of which was a copy of the Notice

of Intent to Acquire and Good Faith Offer.  As such, Hough's motion to strike was

denied.  Hough has raised two assignments of error on appeal, both of which are

now currently before us for consideration and decision.

ASSIGNMENTS OF ERROR

I.     THE TRIAL COURT ERRED IN FAILING TO MAKE
       A DETERMINATION AS TO WHETHER OR NOT
       PETITIONER COMPLIED WITH O.R.C. §163.04,
       §163.041 AND §163.05 AS REQUIRED BY §163.09.

II.    THE TRIAL COURT ERRED IN FAILING TO
       ADDRESS RESPONDENT'S ARGUMENTS UNDER
       OHIO CIVIL RULE 60(B)(4) AND 60(B)(5).

ASSIGNMENT OF ERROR I

{¶11} In his first assignment of error, Hough contends that the trial court

erred in failing to make a determination as to whether or not Mill Creek complied

with R.C. 163.04, 163.041 and 163.05, as required by R.C. 163.09.  Hough first

argues that Mill Creek failed to attach any exhibits to its petition/complaint to

appropriate property, including the Notice of Intent to Acquire and Good Faith

Offer required by R.C. 163.04.  As discussed above, when Mill Creek filed its

appellate brief and attached a copy of the petition/complaint along with several

exhibits that included  a copy of the Notice of Intent to Acquire and Good Faith

Offer, Hough filed a motion to strike the exhibit from the record based upon its

argument that the notice had not actually been attached to the petition/complaint when it was filed and thus was never properly made part of the record below. However, as also discussed above, this Court denied Hough's motion to strike after it was determined that the exhibits were actually attached to the complaint/petition and therefore were part of the written record below and also part of the record on appeal.

{¶12} Hough also directs our attention to the fact that when testimony was admitted during the compensation trial revealing that the Notice of Intent to Acquire and Good Faith Offer were provided by a contractor and/or subcontractor of Mill Creek, rather than Mill Creek itself, the trial court permitted Hough to amend his pleadings, in particular his answer, to conform to the evidence introduced at trial. Hough argues that the trial court's allowance of the amendment of the answer to conform to the evidence essentially restored Hough to the position of having specifically denied Mill Creek's right to appropriate his property and entitled him to a hearing on the issue of necessity before having the issue of compensation decided by a jury. On the other hand, Mill Creek argues that the issues of authority and necessity were waived as a result of Hough's failure to specifically deny them in his answer and also because Hough engaged in discovery rather than requesting a necessity hearing. Mill Creek further argues that the trial

court properly overruled Hough's motion for a directed verdict regarding Mill Creek's compliance with R.C. 163.04, 163.041 and 163.05.

Legal Analysis

{¶13} We conclude that the question we are presented with on appeal is whether the trial court's grant of Hough's Civ.R. 15 motion to amend his answer to conform to the evidence entitled Hough to a necessity hearing on the issue of whether Mill Creek had complied with R.C. 163.04, 163.041, and 163.05 in filing its petition/complaint to appropriate. Hough acknowledges the special circumstances that took place at the trial court level and also acknowledges the novelty of the situation presented to this Court. Nevertheless, he contends that "[w]hen the [t]rial [c]ourt permitted [him] to amend his answer in order to challenge [Mill Creek's] right to make the appropriation, it resurrected its own obligation to make the necessary and proper findings under §163.09(B)(1)." Mill Creek simply focuses its arguments on the fact that Hough's initial answer failed to specifically deny and set forth operative facts challenging its right to appropriate the property at issue and, as such, that Hough "lost his right to challenge the necessity of the appropriation." Mill Creek fails to acknowledge, however, the procedural quandary that was created when the trial court granted Hough's Civ.R. 15 motion to amend his answer.

{¶14} For the following reasons, we find merit to this argument raised under Hough's first assignment of error and find that because the trial court allowed Hough to amend his answer to raise an "affirmative defense" to Mill Creek's right to appropriate, the trial court was bound by R.C. 163.09(B)(1) to halt the compensation trial and set the matter for a hearing on the issue of necessity. We further conclude that the trial court was required to schedule a necessity hearing despite the fact that the answer was permitted to be amended at the close of evidence during the conclusion of the compensation trial. Moreover, as will be discussed in more detail below, we find that the trial court's denial of Hough's motion for a directed verdict did not dispense with the requirement of scheduling the matter for a necessity hearing.

Eminent Domain

{¶15} Article I, Section 19 of the Ohio Constitution provides: "Private property shall ever be held inviolate, but subservient to the public welfare." *Wray v. Allied Indus. Dev. Corp.*, 138 Ohio App.3d 362, 364, 741 N.E.2d 238 (2000). Further, "[t]he Fifth Amendment states that private property shall not be 'taken for public use, without just compensation,' and is applicable to the states through the Fourteenth Amendment." *Paczewski v. Antero Resources Corporation*, 7th Dist. Monroe No. 18MO0016, 2019-Ohio-2641, 2019 WL 2722600, ¶ 36, citing *Chicago, B. & Q.R. Co. v. City of Chicago*, 166 U.S. 226, 241, 17 S.Ct. 581, 41

L.Ed. 979 (1897). As the Supreme Court of Ohio has explained, "[t]he sovereign's right to take property may be conferred by the legislature on municipalities, which enjoy broad discretion in determining whether a proposed taking serves the public." *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 70. However, "when the authority is delegated to another, the courts must ensure that the grant of authority is construed strictly and that any doubt over the propriety of the taking is resolved in favor of the property owner." *Id.*, citing *Pontiac Improvement Co. v. Board of Com'rs. Of Cleveland Metropolitan Park Dist.*, 104 Ohio St. 447, 453-454, 135 N.E. 635 (1922) ("The right of eminent domain is an attribute of sovereignty, and only the sovereign power, or one to whom it has delegated the right, can take property without the consent of the owner, and, when this right has been granted to a subdivision of the state, a person, or a corporation, the terms of the grant must be strictly pursued. When the matter is in doubt, it must be resolved in favor of the property owner. These principles are firmly established").

Chapter 163 of the Ohio Revised Code: "Appropriation of Property."

{¶16} A review of several provisions of the Ohio Revised Code related to the appropriation of property is required at this juncture. R.C. 163.05 governs petitions for appropriation and provides that "[a]n agency that has met the requirements of sections 163.04 and 163.041 of the Revised Code, may commence

proceedings in a proper court by filing a petition for appropriation * * *.” R.C. 163.04 is entitled “Notice; good faith offer to purchase; appraisal; inability to agree; limiting effects of projects that will disrupt flow of traffic or impede access to property” and it provides in section (A) that “[a]t least thirty days before filing a petition pursuant to R.C. 163.05 of the Revised Code, an agency shall provide notice to the owner of the agency’s intent to acquire the property.” R.C. 163.04 further provides in section (B) that in addition to the notice described in R.C. 163.04(A), not less than thirty days before filing a petition, “an agency shall provide an owner with a written good faith offer to purchase the property.” This “notice of intent to acquire” and “good faith offer” must “be substantially in the form set forth in section 163.041 of the Revised Code[]” and “shall be delivered personally on, or by certified mail to, the owner of the property or the owner’s designated representative.” R.C. 163.04(A).

{¶17} Once a petition for appropriation is filed by an agency, R.C. 163.08, which governs “Answer[s] by owners,” provides that “[a]ny owner may file an answer to such petition.” R.C. 163.08 further specifies as follows regarding the contents of the answer:

> Such answer shall be verified as in a civil action and shall contain a general denial or specific denial of each material allegation not admitted. *The agency's right to make the appropriation, the inability of the parties to agree, and the necessity for the appropriation shall be resolved by the court in favor of the agency unless such matters are specifically denied in the answer*

*and the facts relied upon in support of such denial are set forth therein * * ** (Emphasis added).

{¶18} R.C. 163.09 governs "Declaration of value and damages; time for assessment of compensation by jury; hearings" and provides in section (B)(1) as follows:

> When an answer is filed pursuant to section 163.08 of the Revised Code and any of the matters relating to the right to make the appropriation, the inability of the parties to agree, or the necessity for the appropriation are specifically denied in the manner provided in that section, the court shall set a day, not less than five or more than fifteen days from the date the answer was filed, to hear those matters.

{¶19} The hearing referenced in R.C. 163.09(B)(1) is commonly referred to as a "necessity hearing." R.C. 163.09 further provides in section (C) as follows:

> When an answer is filed pursuant to section 163.08 of the Revised Code, and none of the matters set forth in division (B) of this section is specifically denied, the court shall fix a time within twenty days from the date the answer was filed for the assessment of compensation by a jury.

{¶20} The hearing referenced in R.C. 163.09(C) is commonly referred to as a "compensation trial."

{¶21} Thus, reading these statutory provisions in conjunction with one another, it appears that a property owner may file an answer in response to an agency's filing of a petition for appropriation. If an owner files an answer that fails to specifically deny "in the manner provided in" R.C. 163.08 an agency's "right to make the appropriation, the inability of the parties to agree, or the

necessity for the appropriation[,]" the question of necessity is essentially waived and the matter must proceed to what is commonly referred to as a "compensation trial." R.C. 163.09(C). However, if an owner files an answer specifically denying (in the manner provided by R.C. 163.08) the agency's right to appropriate, the necessity for the appropriation, or the inability of the parties to agree, then R.C. 163.09(B)(1) requires the trial court to set the matter for a necessity hearing before proceeding to a compensation trial.

{¶22} Here, as set forth above, Hough concedes that he initially waived the issues of the agency's right to appropriate as well as the necessity for the appropriation. This waiver was clear throughout the proceedings below as several hearings were held and discovery was conducted. Further, the record is clear that the matter proceeded to and through a jury trial on the issue of compensation. However, prior to the conclusion of the compensation trial, Hough's counsel moved the trial court pursuant to Civ.R. 15 to amend the pleadings to conform to the evidence. This request was made as a result of testimony provided by Mill Creek's representative, Stephen Avery, indicating that the Notice of Intent to Acquire and Good Faith Offer were provided to Hough by one of Mill Creek's contractors or possibly even the contractor's subcontractor, rather than Mill Creek itself, coupled with a lack of evidence in the record demonstrating the contractor and/or subcontractor had been properly empowered to act on behalf of Mill Creek.

{¶23} The following exchange took place between the court and counsel near the conclusion of the compensation trial, but before the matter was submitted to the jury:

| | |
|---|---|
| Mr. Rebraca: | Your Honor, the respondent's going to move to conform his pleadings to the evidence that's been provided at this time under Civil Rule 15.  At the onset of this case, necessity was waived, essentially, by not addressing it in the answer.  Based on the evidence that's been presented today, I believe that necessity has now become an issue. Under Ohio Revised Code 163, the appropriate agency needs to make a written offer of good faith to the respondent here.  There's no evidence on the record of a written offer being provided by anybody from the agency. |
| The Court: | Attorney Farbman? |
| Ms. Farbman: | The actual written offer that was done on behalf of the park that Mr. Avery testified to was attached to the complaint, which we talked about today.  So that's in evidence.  He testified that it was sent – these things were sent out and done pursuant to their contract with GPD, and then GPD got O.R. Colan on board.  So it was satisfied.  The offer was delivered.  That's why we're here. |
| The Court: | It's my understanding, and I'm going to defer – I'm going to defer to – for a moment to counsel for the petitioner the issue of necessity is to be addressed – |
| Ms. Farbman: | Before the trial, yeah. |

| | |
|---|---|
| The Court: | Certainly before the trial. |
| Ms. Farbman: | Correct. It's a preliminary step that must be – |
| The Court: | And we – in fact, we discussed, I believe, in trial hearings – when I say pretrial hearings, I'm talking about the numerous status hearings and pretrial hearings that we had over the course of time – that necessity was not – in fact, not being challenged in this matter, but waived. That was my understanding. |
| Mr. Rebraca: | It was my understanding, too, Your Honor. However, at this point – at that point in time, we did not know that the agency, Mill Creek Park, did not provide the offer. Mr. Avery testified that there was some random Board vote that approved these people to make the offers, but none of them have been admitted into evidence. |
| Ms. Farbman: | That's not what he testified to. |
| Mr. Rebraca: | I specifically asked him who from Mill Creek Park made the offer. |
| Ms. Farbman: | And he said GPD was the contractor and O.R. Colan was the subcontractor, and O.R. Colan, who does this for a living, went out and talked to every – |
| The Court: | Yes. I'm going to overrule the motion for – I'll allow your pleadings to conform to the evidence. In the form of an affirmative defense, is that what you're suggesting, that – |
| Mr. Rebraca: | Yes. |

The Court:          -- you're permitted to amend your answer?

Mr. Rebraca:        Yes, Your Honor.

The Court:          For that matter, Attorney Rebraca, was that
                    the basis of your motion for directed verdict?

Mr. Rebraca:        Yes, Your Honor.

The Court:          Very well.  Overruled.

{¶24} A close reading of the transcript reveals that although the trial court overruled Hough's motion for a direct verdict on the issue, it granted Hough's request to amend his answer to assert an affirmative defense related to Mill Park's provision, or failure to provide, a Notice of Intent to Acquire and Good Faith Offer as required by R.C. 163.04 and 163.041 prior to the filing of its petition for appropriation pursuant to R.C. 163.05.[1]  We conclude that under these limited circumstances, once the trial court allowed Hough to amend his answer, it was required to set the matter for a necessity hearing prior to proceeding to judgment on the issue of compensation.  A necessity hearing would have permitted Hough to further develop his challenge to Mill Creek's right to appropriate and would have

---

[1]Although the magistrate clearly permitted Hough to amend his answer to conform to the evidence at trial on the record and in open court, the magistrate's decision mistakenly stated that the motion to amend the pleadings had been denied.  When counsel was questioned about this discrepancy by this Court during oral argument, counsel for Mill Creek did not dispute that Hough's Civ.R. 15 motion had been granted.  Under these circumstances, this Court has the authority to sua sponte modify the magistrate's decision to correct a scrivener's error.  *Ameritech Publishing, Inc. v. Snyder Tire Wintersville, Inc.*, 7th Dist. Jefferson No. 09 JE 35, 2010-Ohio-4868, ¶ 43-44 (where the appellate court sua sponte modified the trial court's judgment to correct a scrivener's error after clarifying with the parties during oral argument that the discrepancy in the record was simply a scrivener's error).  However, because we ultimately determine that the magistrate's decision and subsequent judgment issued by the trial court must be vacated, we need not modify the magistrate's decision.

permitted Mill Creek to respond to Hough's newly raised challenge to its authority to appropriate.

{¶25} We further conclude that the trial court's denial of Hough's motion for a directed verdict did not eliminate the need for a necessity hearing. The motion for a directed verdict appears to have been an oral motion made on the record during the compensation trial. Civ.R. 50 governs motions for directed verdicts and provides in section (A)(1) that "[a] motion may be made on the opening statement of the opponent, at the close of the opponent's evidence or at the close of all evidence." The rule further provides in section (A)(4) that "[w]hen a motion for a directed verdict has been properly made," if the court finds after construing the evidence most strongly in favor of the party against whom the motion is directed, "that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." A directed verdict is improper "if reasonable minds could come to different conclusions on any determinative issue." *Poland Twp. Bd. of Trustees v. Swesey*, 7th Dist. Mahoning No. 02CA185, 2003-Ohio-6726, ¶ 8. Furthermore, because motions for directed verdict "test the legal sufficiency of the evidence[,] * * * such motions present a question of law even though in deciding such motions it is necessary to review and consider evidence." *Id., citing Grau v.*

*Kleinschmidt*, 31 Ohio St.3d 84, 90, 509 N.E.2d 399. "An appellate court reviews questions of law de novo." *Poland Twp.* at ¶ 8, citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, 652 N.E.2d 684.

{¶26} In our view, the motion for directed verdict was premature. Even though it was made at the close of all evidence during the compensation trial, the motion sought a directed verdict on the issues of authority and/or necessity, which were legal issues that had just been permitted to be raised and that had yet to be fully argued or heard. Further, the fact that there had not been an opportunity to place any evidence going to the legal issues of authority and/or necessity into the record, there was no evidence for the trial court to consider when it denied the motion, which further leads to the conclusion that the motion was prematurely made. As this Court explained in *Netherlands Insurance Company v. BSHM Architects, Inc.*, 2018-Ohio-3736, 111 N.E.3d 1229, ¶ 44 (7th Dist.), "[a]ppellate courts have indicated that a motion [made] at times different from the ones expressed in Civ.R. 50(A)(1) are improper[]" and "should not be entertained." *Citing Sherwin v. Cabana Club Apartments*, 70 Ohio App.2d 11, 433 N.E.2d 932 (8th Dist. 1980). However, this Court also observed in *Netherlands* that the granting of a premature motion for directed verdict "may result in harmless error" depending on the circumstances. *Netherlands* at ¶ 45.

{¶27} Here, we are obviously dealing with the denial of a motion for a directed verdict rather than the granting of a motion for a directed verdict. Nonetheless, the denial of Hough's motion for a directed verdict merely meant that the trial court determined that reasonable minds may come to different conclusions on the issues of authority and/or necessity and the summary denial did not foreclose either Hough or Mill Creek from presenting evidence and arguments related to those issues at a later necessity hearing. Thus, although we deem Hough's motion to have been prematurely made and the trial court's entertainment of the motion and denial of the motion to be improper, we also find that the denial of the motion constituted harmless error because those issues could still yet be argued and determined at a necessity hearing.

{¶28} In light of the foregoing, we have found that the trial court's allowance of Hough's Civ.R. 15 motion to amend the pleadings to conform to the evidence essentially permitted Hough to effectively amend his answer to assert a specific denial in the manner provided by R.C. 163.08 as to Mill Creek's authority to appropriate the property at issue and created at that time an obligation on the part of the trial court to schedule the matter for a necessity hearing. Because the trial court did not hold such a hearing and instead allowed the issue of compensation to be submitted to the jury for determination and further allowed the trial to be concluded without first conclusively determining the issue of Mill Park's

authority to appropriate at a necessity hearing, the trial court erred. Additionally, although we have found that Hough's motion for a directed verdict on the issue of Mill Creek's authority was prematurely made and that the trial court's entertainment of the motion and ruling on the motion was improper, we have also found that the trial court's error constituted harmless error because Hough was not foreclosed from having a necessity hearing as a result of the denial of the motion.

{¶29} Before concluding, we must note that we have identified no other cases involving the appropriation of property that have a procedural history similar to this case. These appear to be uncharted waters in terms of what an appropriate remedy is for the events that occurred during the compensation trial. However, despite the lack of guidance on the questions and issues presently before us, we conclude the proper remedy is to vacate the jury's verdict on the issue of compensation and to vacate the magistrate's decision confirming the jury verdict, as well as the trial court's judgment confirming the magistrate's decision. At the time the trial court permitted Hough to amend his answer, the proceedings should have been stopped, or at least delayed, in order for the trial court to set the matter for a necessity hearing. Because that was not done, we conclude the only way to remedy these matters is to vacate the verdict and judgments and remand the case to an earlier stage in the proceedings to determine the issue of authority at a necessity hearing in accordance with R.C. 163.09.

{¶30} Accordingly, the jury verdict, the Agreed Jury Award and Magistrate's Decision, and the Judgment Entry issued by the trial court are hereby vacated. Furthermore, this matter is remanded with instructions for the trial court to permit additional pleadings and evidence as necessary in response to the trial court's allowance of Hough's answer to be amended to challenge Mill Creek's right to appropriate the property at issue and to schedule this matter for a necessity hearing as required by R.C. 163.09.

## ASSIGNMENT OF ERROR II

{¶31} In his second assignment of error, Hough contends that the trial court erred in failing to address his arguments under Civ.R. 60(B)(4) and (5). More specifically, Hough contends that the trial court erred in denying his motion to reopen which was grounded upon the Ohio General Assembly's passage of H.B. 110 just two weeks after the jury returned a verdict in this matter. H.B. 110 provided in Section 715.05(B) that certain park districts, which by definition included Mill Creek, were prohibited from appropriating property for the purpose of providing recreational trails. Mill Creek counters by arguing that the trial court did not abuse its discretion in denying Hough's motion because the legislation at issue was not in effect at the time the case was decided and the legislation was not retroactive.

{¶32} As set forth above, we have already concluded that at the time the trial court granted Hough's motion to amend his pleadings to assert a challenge to Mill Creek's authority to appropriate the property at issue, R.C. 163.09(B)(1) required the trial court to set the matter for a necessity hearing before proceeding to a determination on the issue of compensation. Even though the amendment of the pleadings occurred at the conclusion of testimony during the compensation trial, it was incumbent upon the trial court to set the matter for a necessity hearing and determine compliance with R.C. 163.04, 163.041 and 163.05 before proceeding to the issue compensation. As we concluded in our disposition of Hough's first assignment of error, the compensation trial should have been stopped and should not have been concluded without the trial court first making the required statutory determinations regarding necessity. As such, because we have ordered that the trial court's judgment regarding the issue of compensation must be vacated and that the matter must be remanded to an earlier stage in the proceedings for the issues related to Mill Creek's authority to appropriate to be determined before proceeding, if at all, to a determination on the issue of compensation, the question of whether the trial court erred in denying a subsequently-filed motion to reopen is moot.

**JUDGMENT VACATED AND REMANDED.**

## **<u>JUDGMENT ENTRY</u>**

It is ordered that the JUDGMENT BE VACATED AND REMANDED and costs be assessed to Appellee.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Mahoning County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J., & Abele, J.: Concur in Judgment and Opinion.

For the Court,


_____
Jason P. Smith (Sitting by Assignment)


### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**